# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# GAINESVILLE DIVISION

| | |
|---|---|
| KELLY JACKSON, DALLAS GONZALEZ, and DARREN WILLIAMS,<br><br>   Plaintiffs,<br><br>v.<br><br>DISINFECTANT SOLUTIONS OF ATLANTA, LLC and KELVIN STINYARD,<br><br>   Defendants. | CIVIL ACTION FILE NO:<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiffs, KELLY JACKSON, DALLAS GONZALEZ, and DARREN WILLIAMS bring this action for damages and other relief against Defendants DISINFECTANT SOLUTIONS OF ATLANTA, LLC, and KELVIN STINYARD, and alleges as follows:

## NATURE OF THE ACTION

1. This is an action for unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.* ("FLSA"). Kelly Jackson and Darren Williams also assert a claim of retaliation under the FLSA.

## PARTIES

2. Plaintiff Kelly Jackson ("Ms. Jackson") is a citizen of Georgia.

3. Plaintiff Dallas Gonzalez ("Ms. Gonzalez") is a citizen of Georgia.

4. Plaintiff Darren Williams ("Mr. Wiliams," and collectively with Ms. Jackson and Ms. Gonzalez, "Plaintiffs") is a citizen of Georgia.

5. Defendant Disinfectant Solutions of Atlanta, LLC ("DCA") is a Georgia company licensed to conduct business in the state of Georgia.

6. DCA's principal place of business is located at 2470 Windy Hill Road SE, Suite 436, Marietta, Georgia 30067.

7. DCA may be served with process by delivering a copy of the Summons and this Complaint to its registered agent, Kelvin Stinyard, at 980 Howell Mill Road NW, Unit 606, Atlanta, Georgia 30318.

8. DCA is subject to personal jurisdiction in this Court.

9. Defendant Kelvin Stinyard ("Mr. Stinyard," and collectively with DCA, "Defendants") is a natural person and may be served with service of process wherever he may be found.

10. Mr. Stinyard is subject to personal jurisdiction of this Court.

## JURISDICTION AND VENUE

11. The Court has original jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 because it raises a question of federal law.

12. Under 28 U.S.C. § 1391 and Local Rule 3.1(B)(3), venue is proper because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Cobb County, Georgia, which is located within the Atlanta Division of the Northern District of Georgia.

## FACTUAL ALLEGATIONS SHOWING THAT LANIER HOME EMPLOYED PLAINTIFFS

13. DCA is a Georgia company based in Marietta, Georgia, which provides cleaning services to commercial and governmental entities.

14. DCA has been providing its services since 2016.

15. DCA provides its services throughout the state of Georgia.

16. DCA qualifies as an "employer" within the meaning of the FLSA.

17. DCA is a covered enterprise under the FLSA.

18. DCA's gross sales or business done exceeds $500,000.00 annually.

19. DCA is an enterprise engaged in commerce or the production of goods for commerce within the meaning of the FLSA.

20. DCA employs two or more individuals who engage in commerce or regularly handle or otherwise work on goods or materials that have been moved in or produced for commerce.

21. While performing their job duties, DCA employees regularly handle materials that were manufactured outside of the state of Georgia.

22. While performing their job duties, DCA employees regularly use phones and/or computers manufactured outside the state of Georgia.

23. DCA employed Plaintiffs as that term is defined by the FLSA.

24. Ms. Jackson worked for DCA as an HR manager and recruiter.

25. As an HR manager and recruiter, Ms. Jackson onboarded, recruited new employees, maintained job-posting sites, made sure site location had employees, conducted daily reports, and handheld project management.

26. Ms. Gonzalez worked for DCA as a site manager.

27. As a site manager, Ms. Gonzalez oversaw employees working on projects for Georgia Juvenile Justice and others throughout Georgia.

28. Mr. Williams worked for DCA as a site supervisor.

29. As a site supervisor, Mr. Williams, oversaw employees at all projects for DCA, traveling throughout Georgia overnight overseeing project sites.

30. DCA hired Plaintiffs.

31. DCA maintained Plaintiffs' employment records.

32. DCA set Plaintiffs' work schedule.

33. DCA regularly evaluated Plaintiffs' job performance.

34. DCA paid Plaintiffs' wages.

35. DCA directed Plaintiffs' work.

**FACTUAL ALLEGATIONS SHOWING MR. STINYARD EMPLOYED PLAINTIFFS**

36. Mr. Stinyard employed Plaintiffs within the meaning of the FLSA.

37. Mr. Stinyard is the sole organizer of DCA.

38. Mr. Stinyard is the Chief Executive Officer of DCA.

39. Mr. Stinyard hired Plaintiffs.

40. Mr. Stinyard directed Plaintiffs' work.

41. Mr. Stinyard exerts operational control over DCA.

42. Mr. Stinyard set the pay policies relevant to Plaintiffs.

43. Mr. Stinyard enforced DCA's pay policies.

44. Mr. Stinyard had the ability to discipline Plaintiffs.

45. Mr. Stinyard had the ability to terminate Plaintiffs.

46. Mr. Stinyard terminated Ms. Jackson.

47. Mr. Stinyard terminated Mr. Williams

48. Mr. Stinyard directed Plaintiffs' work.

49. At all times relevant to this Complaint, Mr. Stinyard had the ability to hire individuals to work for DCA.

50. While employed by Defendants, Ms. Jackson was an individually covered employee under the FLSA.

51. By way of example, pursuant to her job duties, Ms. Jackson regularly used phones, computers and other items manufactured outside of the state of Georgia, recruited employees and potential employees from outside of Georgia, and used job posting sites which are based outside of Georgia.

52. Ms. Jackson used Indeed.com to recruit potential employees.

53. Ms. Jackson used avaHR as Defendants' hiring and business growth software.

54. While employed by Defendants, Ms. Gonzalez was an individually covered employee under the FLSA.

55. While employed by Defendants, Mr. Williams was an individually covered employee under the FLSA.

56. By way of example, pursuant to their job duties, Ms. Gonzalez and Mr. Williams regularly used phones, computers and other items manufactured outside of the state of Georgia, and used PayChex and Opinator computer systems which are based outside Georgia.

57. PayChex is the payroll system used by Defendants.

58. Opinator is a customer service platform used by Defendants.

**FACTUAL ALLEGATIONS SHOWING DEFENDANTS JOINTLY EMPLOYED PLAINTIFFS**

59. Mr. Stinyard and DCA jointly employed Plaintiffs within the meaning of the FLSA.

60. Ms. Jackson worked for Defendants from May 14, 2025 until July 11, 2025.

61. Defendants compensated Ms. Jackson at an hourly rate of $16.00.

62. Ms. Gonzalez worked for Defendants from May 5, 2025 until June 26, 2025.

63. Defendants compensated Ms. Gonzalez at an hourly rate of $16.50.

64. Mr. Williams worked for Defendants from May 25, 2025 until July 11, 2025.

65. Defendants compensated Mr. Williams at an hourly rate of $17.00.

66. Defendants set Plaintiffs' pay rate.

**FACTS SUPPORTING PLAINTIFFS' CLAIM FOR UNPAID OVERTIME WAGES IN VIOLATION OF THE FLSA**

67. Plaintiffs' typical work schedule was Monday through Friday, from 8:00 a.m. to 5:00 p.m.

68. Plaintiffs were scheduled to work more than 40 hours per workweek.

69. To complete their work on behalf of Defendants, Plaintiffs frequently worked before and after their typical work schedule and on weekends.

70. Defendants did not track all of Plaintiffs' time.

71. For example, Plaintiffs were not allowed to track their time when working from home on behalf of Defendants.

72. Despite not tracking all of Plaintiffs' time, Defendants knew or should have known Plaintiffs worked in excess of 40 hours per workweek.

73. Defendants required Plaintiffs to be on call twenty-four (24) hours a day.

74. Plaintiffs frequently communicated with Mr. Stinyard before and after their scheduled shift.

75. Plaintiffs regularly communicated with Kevin DePaula before and after their scheduled shift.

76. Mr. DePaula was Plaintiffs' supervisor during their tenure with Defendants.

77. Defendants required Plaintiffs to respond to calls and emails outside of their regularly scheduled shifts.

78. Defendants required Plaintiffs to continue working in response to after-hours calls and emails until all issue were resolved.

79. Defendants did not track any of Plaintiffs' per- or post-shift work.

80. Defendants automatically deducted a one-hour lunch break for each workday.

81. Defendants deducted this one-hour lunch break regardless of whether Plaintiffs actually took a full hour for lunch.

82. Despite Defendants deducting an hour for lunch, Plaintiffs rarely, if ever, took an hour for lunch during the workday.

83. Defendants knew or should have known Plaintiffs regularly did not take an hour-long lunch break.

84. Plaintiffs told Mr. Stinyard that they did not take a full hour for lunch.

85. Mr. Stinyard was frequently in the office and observed, or should have observed, Plaintiffs working through their lunch break.

86. Ms. Jackson frequently returned to the office after her scheduled shift to perform work on behalf of Defendants, but was not allowed to log this work time.

87. Defendants knew, or should have known, Ms. Jackson returned to the office after her scheduled shift because Ms. Jackson would inform Defendants via group message that she had returned to the office after hours.

88. Defendants directed Plaintiffs to work more than 40 hours during most, if not all, workweeks.

89. This, and other practices by Defendants, resulted in Plaintiffs working hours in excess of 40 hours per week, for which they were not compensated at one and one-half times their regular rate of pay.

90. Each Plaintiff has paystubs showing hours worked over forty in a workweek that were compensated at the straight-time rate.

91. Defendants knew, or should have known, that Plaintiffs worked in excess of 40 hours during certain workweeks, for which they were not properly compensated.

92. Defendants knowingly violated the FLSA's timekeeping provision by failing to accurately track Plaintiffs' time.

**FACTUAL ALLEGATIONS IN SUPPORT OF MS. JACKSON AND MR. WILLIAMS' CLAIM OF RETALIATION UNDER THE FLSA**

93. Defendants "employed" Ms. Jackson under the FLSA.

94. Defendants "employed" Mr. Williams under the FLSA.

95. On June 27, 2025, Mr. Williams received a paycheck covering two workweeks, from June 8, 2025 to June 21, 2025.

96. The June 27, 2025 paycheck showed 112.53 hours of work during the two-workweek period.

97. All of the 112.53 hours on the June 27, 2025 paycheck were paid at Mr. Williams' straight-time rate of $17.00.

98. After receiving the June 27, 2025, Mr. Williams complained to Mr. Jackson about unpaid overtime wages, on or about July 7, 2025.

99. Mr. Williams also complained to Mr. DePaula about unpaid overtime wages.

100. On or about July 8, 2025, Ms. Jackson complained to Mr. Stinyard about her unpaid overtime wages.

101. On that same date, Ms. Jackson also complained that Mr. Williams was not being compensated for his overtime wages.

102. Mr. Stinyard told Ms. Jackson that she was not owed overtime because it is not owed when an employee is told she is not entitled to overtime pay.

103. Ms. Jackson informed Mr. Stinyard on multiple occasions that failure to pay overtime is illegal.

104. In response to these complaints, Defendants terminated Mr. Williams and Ms. Jackson.

105. On July 10, 2025, Defendants terminated Mr. Williams.

106. Defendant terminated Ms. Jackson on July 11, 2025.

107. Prior to complaints of unpaid overtime, Mr. Williams had not received any written or verbal warnings from Defendants.

108. Prior to complaints of unpaid overtime, Ms. Jackson had not received any written or verbal warnings from Defendants.

109. Prior to complaints of unpaid overtime, Defendants told Mr. Williams he was performing his job very well.

110. Prior to her complaints of unpaid overtime, Defendants told Ms. Jackson she was performing her job duties beyond expectations.

111. Defendants' decision to terminate Mr. Williams and Ms. Jackson was primarily motivated by complaints of unpaid overtime.

112. Complaining of unpaid overtime constituted legitimate protected activity under the FLSA.

113. Defendants terminated Mr. Williams and Ms. Jackson in an attempt to dissuade them, and all other current and former employees from asserting their federal-protected rights.

**COUNT 1: FAILURE TO PAY OVERTIME WAGES**

114. Plaintiffs regularly worked more than 40 hours per week during certain workweeks while employed by Defendants.

115. Defendants failed to compensate Plaintiffs for all time worked, including those hours worked in excess of 40 per workweek.

116. Defendants failed to compensate Plaintiffs at one and one-half times their regular rate of pay for all time worked over 40 hours during certain workweeks.

117. Defendants suffered or permitted Plaintiffs to work hours in excess of 40 during certain workweeks.

118. Defendants knew, or should have known, that Plaintiffs worked in excess of 40 hours during certain workweeks.

119. Defendants knew Plaintiffs worked more than 40 hours during certain workweeks and chose not to pay them one and one-half times their regular rate of pay for time worked over 40 hours per workweek.

120. Defendants violated the FLSA's record-keeping provision by failing to keep accurate time records of Plaintiffs' work on behalf of Defendants.

121. Defendants violated the FLSA's overtime provision willfully and with reckless disregard for Plaintiffs' rights.

122. Plaintiffs seek their unpaid overtime for all time over 40 hours in certain workweeks, in which Defendants failed to compensate them at 1.5 times their regular rate of pay.

123. Pursuant to U.S.C. § 216(b), Defendants are liable to Plaintiffs for all unpaid overtime wages, liquidated damages, and attorneys' fees and costs of litigation.

**COUNT 2: RETALIATION IN VIOLATION OF THE FLSA AS TO PLAINTIFF JACKSON AND PLAINTIFF WILLIAMS**

124. By complaining of unpaid overtime wages, Plaintiff Jackson and Plaintiff Williams engaged in legitimate protected activity within the meaning of the FLSA.

125. Defendants' actions against Plaintiff Jackson and Plaintiff Williams of terminating them are materially adverse to a reasonable employee because Defendants terminated Plaintiff Jackson and Plaintiff Williams due to complaints of unpaid overtime.

126. Defendants' actions were made with the intent to dissuade Plaintiff Jackson, Plaintiff Williams, and other reasonable workers from making or supporting an FLSA claim.

127. A causal connection exists between the Plaintiff Jackson and Plaintiff Williams' protected activity and the adverse action, given the proximity-in-time between their complaint of unpaid overtime and their termination.

128. Defendants violated the FLSA, 29 U.S.C. § 215(a)(3), by terminating the employment of Plaintiff Jackson and Plaintiff Williams to retaliate against them

because they took action against Defendants related to willful violations of FLSA's overtime wage provisions.

129. Defendants' decision to terminate because Plaintiff Jackson and Plaintiff Williams complained of unpaid overtime was a violation of the federal Fair Labor Standards Act.

130. Section 216(b) of the FLSA makes any person or entity who violates section 215(a)(3) liable for such legal and equitable relief as is appropriate to effectuate the purposes of that section, including without limitation, compensatory damages, as well as an additional equal amount as liquidated damages, costs, and attorneys' fees.

## DEMAND FOR JUDGMENT

Plaintiff respectfully requests that the Court:

(a) Declare that Defendants jointly employed Plaintiffs;

(b) Declare that Defendants violated the FLSA's overtime provision;

(c) Enter judgment against Defendants that they violated the FLSA's and, further, that their violations were willful;

(d) Enter a monetary judgment against Defendants, including:

   i) Overtime wages at one and one-half times Plaintiffs' regular rate of pay;

ii) Liquidated damages in an amount equal to Plaintiffs' unpaid overtime wages;

iii) Compensatory damages to Plaintiffs Jackson and Williams in an amount to be proven at trial;

iv) General damages to Plaintiffs Jackson and Williams;

v) Reasonable costs and attorneys' fees;

vi) Prejudgment interest;

vii) Post-judgement interest continuing to accrue; and,

(e) Grant such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand a jury trial.

Respectfully submitted: August 1, 2025.

/s/ *William S. Cleveland*
William S. Cleveland
Georgia Bar No. 721593
william@guilmettehenderson.com

**GUILMETTE HENDERSON, LLC**
1355 Peachtree Street NE, Suite 1125
Atlanta, GA 30309
**T:** (833) 377-3060

*Counsel for Plaintiffs*

# CERTIFICATE OF COMPLIANCE

Pursuant Local Rule 7.1D, counsel hereby certifies that the foregoing has been prepared using Times New Roman 14-point font, as approved by Local Rule 5.1C.

*/s/ William S. Cleveland*
William S. Cleveland
Georgia Bar No. 721593
william@guilmettehenderson.com

**GUILMETTE HENDERSON, LLC**
1355 Peachtree Street NE, Suite 1125
Atlanta, GA  30309
**T:** (833) 377-3060

*Counsel for Plaintiffs*